## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PHILLIP JOSHUA KYLE BROOKS,        *

    Plaintiff,                    *

v.                                *        Civ. No. DLB-23-208

TIMOTHY MCKIMMIE,           *

    Defendant.                 *

### MEMORANDUM OPINION

Charles County deputy sheriff Timothy McKimmie arrested Phillip Joshua Kyle Brooks at the Hilton Garden Inn in Waldorf, Maryland after a front desk clerk complained to police that Brooks, who was staying at the hotel for a work conference, was behaving in a disorderly manner. McKimmie and other officers forced their way into Brooks's room and arrested him. McKimmie charged Brooks with trespassing and disorderly conduct, and Brooks spent a night in jail. The charges were eventually dismissed.

Brooks filed this civil rights action under 42 U.S.C. § 1983 against McKimmie and several other defendants. A jury found that McKimmie falsely arrested and falsely imprisoned Brooks in violation of Maryland state law; that McKimmie violated Brooks's right to be free from unlawful arrest under the Maryland Declaration of Rights; and that McKimmie violated Brooks's right to be free from unlawful arrest under the Fourth Amendment to the U.S. Constitution. The Court entered judgment against McKimmie only on the Fourth Amendment claim. The Court did not enter judgment against McKimmie on the state-law claims because the jury found that McKimmie did not act with malice and McKimmie thus was immune from liability on those claims.

Pending before the Court are two post-trial motions. McKimmie filed a Rule 50(b) motion for judgment as a matter of law on the Fourth Amendment claim, arguing that he is entitled to

qualified immunity. ECF 98. Brooks filed a Rule 59(e) motion to alter or amend the judgment, arguing that McKimmie is not immune from liability on the state-law claims. ECF 106. The motions are fully briefed. ECF 98-1, 104, 105, 107, & 110. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, both motions are denied.

## I. Background

### A. Procedural History

On October 3, 2022, Brooks filed this lawsuit in state court against the State of Maryland, Charles County, Charles County Sheriff Troy Berry, St. Charles Hotel Operating, LLC d/b/a Hilton Garden Inn, and McKimmie, asserting various constitutional and tort claims arising out of his arrest at the Hilton. ECF 1, at 1–2; ECF 1-2. After the state, with the consent of all defendants, removed the case to federal court, some defendants filed motions to dismiss, ECF 12, 13, & 21, and some filed motions for summary judgment, ECF 52 & 53. Brooks voluntarily dismissed a claim for intentional infliction of emotional distress. ECF 25. When the dust settled, the only claims that survived were Brooks's state-law claims against McKimmie for false imprisonment, malicious prosecution, battery, and false arrest, his federal constitutional claim against McKimmie for malicious prosecution, and his federal and state constitutional claims against McKimmie for unlawful arrest and excessive force.

Trial began on January 12, 2026. The jury heard evidence over two days and deliberated over two more. On January 15, 2026, the jury returned a partial verdict in Brooks's favor. The jury found McKimmie liable for false arrest and false imprisonment under Maryland state law and for violating Brooks's state and federal constitutional rights to be free from unlawful arrest. ECF 94, at 1–2. The jury found McKimmie not liable on Brooks's remaining claims. *Id.* The jury also found

that McKimmie did not act with malice. *Id.* at 2. The jury awarded Brooks $27,500 in compensatory damages. *Id.* at 3.

On January 27, 2026, the Court entered judgment in Brooks's favor on the Fourth Amendment unlawful-arrest claim and awarded him $27,500 in damages. ECF 101, at 2. The Court did not enter judgment in Brooks's favor on the false arrest, false imprisonment, and state constitutional unlawful-arrest claims because McKimmie did not act with malice and he thus was immune from liability on those claims under the Maryland Tort Claims Act ("MTCA"). *Id.* at 1; *see also* Md. Code Ann., State Gov't § 12-105; Md. Code Ann., Cts. & Jud. Proc. § 5-522(b).

**B.      Evidence Adduced at Trial**

Following the lead of the parties, the Court recites only the trial evidence relevant to the pending motions.

In October 2019, Brooks stayed at the Hilton in Waldorf, Maryland for a business conference. ECF 99, at 6:15–7:7. In the early morning hours of October 10, Charles County deputy sheriff McKimmie and his partner were dispatched to the Hilton in response to a report by the front desk clerk, Leonard Lowery, that Brooks was causing a disturbance. ECF 100, at 4:3–6, 4:14–5:10, 69:1–2. When McKimmie arrived, Lowery told him that Brooks had knocked over "a water bottle and maybe a hand sanitizer" and had left the hotel. *Id.* at 5:15–16, 70:18–20. Lowery asked McKimmie to "talk to [Brooks]" and "get him to calm down[.]" *Id.* at 5:19–21. After searching for and failing to locate Brooks on the premises, McKimmie and his partner left. *Id.* at 7:1–12.

Less than half an hour later, Lowery called the police again and told them that Brooks had returned to the Hilton. *Id.* at 7:23–8:1; 72:6–12. Lowery did not say anything about how Brooks had behaved upon his return. *Id.* at 8:2–4. McKimmie returned to the Hilton, and Lowery asked him to "make sure things were calmed down." *Id.* at 8:9. Lowery did not ask McKimmie to arrest

Brooks for trespassing at this time. *Id.* at 10:1–3. McKimmie went to the door of Brooks's hotel room and told Brooks, through the door, that "the hotel wanted him to stay in the room for the rest of the night[.]" *Id.* at 10:19–20. Brooks expressed confusion and was not "nice about it." ECF 99, at 25:13–14; *see also* ECF 100, at 16:21–22 (McKimmie testifying that Brooks swore at him and told him that he would do what he wanted). McKimmie went to speak to Lowery, told him that his interaction with Brooks had not been "cordial," and asked Lowery what he wanted McKimmie to do next. ECF 100, at 16:11–12. Lowery asked McKimmie to evict Brooks from the hotel. *Id.* at 16:14. McKimmie and his partner went back to Brooks's door. *Id.* at 20:7–8. Another officer arrived and joined them at the door. *Id.* at 23:5–6.

At this point, Brooks's and McKimmie's accounts sharply diverge. The officers were not wearing body cameras, *see id.* at 5:2–4, and no footage of what happened at Brooks's hotel room door was introduced into evidence.

Brooks testified that one of the officers used a room key to spring the lock on his door. ECF 99, at 26:19–21. The door did not open all the way because Brooks had a latch on it. *Id.* at 26:23. One of the officers stuck his foot in the door. *Id.* at 26:19–20. McKimmie told Brooks that, if he did not let the officers in, he would be arrested for trespassing. *Id.* at 26:12–13; *see also* ECF 100, at 20:21–23 (McKimmie testifying that he told Brooks that if he did not leave, he would be locked up for trespassing). "As soon as" McKimmie said that, Brooks responded, "okay, guys, I do not want to be arrested for trespassing. I will let you in." ECF 99, at 26:16–18. To let the officers in, Brooks first had to close the door so that he could undo the latch. *Id.* at 27:2–3. Brooks told the officers that he needed to close the door to open it and asked the officer with his foot in the door to move his foot. *Id.* at 27:1–7. Brooks and the officer "agreed" that the officer would move his foot. *Id.* at 27:18.

As soon as the officer moved his foot and Brooks began to close the door to unhook the latch, the officers kicked in the door, knocking Brooks to the ground. *Id.* at 27:18–28:14. "[W]ithin seconds of seeing" Brooks, the officers arrested him. *Id.* at 32:4–5.

McKimmie had a different recollection. He testified that, after he told Brooks that he would be arrested for trespassing if he did not leave, Brooks responded, "[f]uck you, I paid for my room, I'll do what I want." ECF 100, at 21:2–3. McKimmie testified that he gave Brooks several minutes to leave, but Brooks did not. *Id.* at 57:7–13. McKimmie denied that Brooks told him that he would need to close the door to undo the latch, and he denied that he forced his way into the room. *Id.* at 23:22, 25:14. McKimmie testified that the other officers tackled Brooks after Brooks made an "aggressive stance." *Id.* at 29:16–20.

After Brooks's arrest, the hotel discovered that the door lock was broken during the interaction with the police. *Id.* at 23:16–18. Brooks was charged with disorderly conduct, in violation of Md. Code Ann., Crim. Law § 10-201(c)(5), and trespassing, in violation of Crim. Law § 6-403(b). ECF 56-5, at 2; ECF 56-6. The charges eventually were dismissed. ECF 99, at 44:24–45:7.

## II.    Discussion

### A.    Rule 50(b) Motion

McKimmie has filed a Rule 50(b) motion for judgment as a matter of law. "Judgment as a matter of law 'is properly granted if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'" *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 391 (4th Cir. 2014) (quoting *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004)). When considering a Rule 50 motion, the court "construe[s] the evidence in the light most favorable to the party against whom the motion was made and ask[s]

whether 'there is substantial evidence in the record to support the jury's findings.'" *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (quoting *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir. 1985)). The court must "disregard all evidence favorable to [McKimmie] that the jury [was] not required to believe." *Harris v. Wormuth*, 669 F. Supp. 3d 477, 500 (D. Md. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)). The court "may not substitute [its] judgment for that of the jury or make credibility determinations[.]" *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996). Further, "[i]f the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489–90 (4th Cir. 2005).

McKimmie argues that—even crediting only Brooks's testimony—he is entitled to qualified immunity on Brooks's Fourth Amendment unlawful-arrest claim and that the Court should enter judgment in McKimmie's favor on this claim.

"The defense of qualified immunity shields public officials from civil liability unless they violated a 'statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *Lewis v. Caraballo*, 98 F.4th 521, 530 (4th Cir. 2024) (quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014)). To defeat qualified immunity, the record must show that (1) McKimmie violated Brooks's constitutional right and (2) that right was "clearly established" when the violation occurred. *Id.* "The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).

Here, only the second prong is at issue. McKimmie claims it was not clearly established at the time he arrested Brooks that "announcing 'open the door or you'll be arrested for trespassing' followed by even a brief pause before entering the room was insufficient to establish probable

6

cause for trespass." ECF 98-1, at 6. Brooks responds that no reasonable officer could have believed there was probable cause to arrest him for trespassing because Brooks was not given an opportunity to comply with McKimmie's orders before being arrested and thus Brooks did not "remain" on the property in violation of the relevant trespassing statute, Crim. Law § 6-403(b). Brooks has the better argument. McKimmie has not met his burden of showing that Brooks's right to be free from unlawful arrest was not clearly established in October 2019.

"A right is clearly established if, at the time of the alleged offense, '[t]he contours of the right [allegedly violated were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Lewis*, 98 F.4th at 534 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To determine whether an officer was on notice, "we first look to cases from the Supreme Court, [the United States Court of Appeals for the Fourth Circuit], or the highest court of the state in which the action arose." *Ray v. Roane*, 948 F.3d 222, 229 (4th Cir. 2020). "In the absence of 'directly on-point, binding authority,' courts may also consider whether 'the right was clearly established based on general constitutional principles or a consensus of persuasive authority.'" *Id.* (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017)). The facts need not be an exact match to the facts of an earlier case. *See Williams v. Strickland*, 917 F.3d 763, 770 (4th Cir. 2019) ("In some cases, government officials can be expected to know that if X is illegal, then Y is also illegal, despite factual differences between the two."). Still, courts should take care "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "Instead, [a court] must identify the specific right the plaintiff alleges was infringed at a 'high level of particularity.'" *Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250–51 (4th Cir. 1999)). And "[a]lthough a case directly on point is

not required, existing precedent 'must have placed the statutory or constitutional question beyond debate.'" *Id.* at 505–06 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)).

The jury found McKimmie violated Brooks's Fourth Amendment rights. The Fourth Amendment protects citizens from "unreasonable searches and seizures[.]" U.S. Const. amend. IV. "A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause." *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (citing *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). "Thus, '[i]f a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues.'" *Id.* (alterations in original) (quoting *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001)). "[W]hether a plaintiff's right to be free from arrest is clearly established turns not on 'whether there actually was probable cause . . . but whether an objective law officer could reasonably have believed probable cause to exist.'" *Thurston v. Frye*, 99 F.4th 665, 676 (4th Cir. 2024) (second alteration in original) (quoting *Gomez v. Atkins*, 296 F.3d 253, 261–62 (4th Cir. 2002)).

"Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Elliott v. State*, 10 A.3d 761, 771 (Md. 2010) (quoting *Longshore v. State*, 924 A.2d 1129, 1137 (Md. 2007)). Probable cause is a "fluid concept" that "depends on the totality of the circumstances[.]" *State v. Johnson*, 183 A.3d 119, 129 (Md. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983), and then quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)); *see also Nero v. Mosby*, 890 F.3d 106, 130 (4th Cir. 2018) ("Probable cause is 'a probability or substantial chance of criminal activity, not an actual showing of such activity,' and it is assessed

8

based on the totality of the circumstances." (quoting *Gates*, 462 U.S. at 243 n.13)). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

Here, McKimmie argues that a reasonable officer could have believed there was probable cause to arrest Brooks for trespassing in violation of Crim. Law § 6-403(b). Section 6-403(b) provides in relevant part that "[a] person may not remain on private property . . . after having been notified by the owner or the owner's agent not to do so." The parties do not dispute that, when McKimmie was at Brooks's hotel room door for the second time, McKimmie, acting as the hotel's agent, notified Brooks that he could no longer remain on the property. The disputed issue is whether, between the moment McKimmie gave Brooks notice and the moment the officers broke down the door and arrested Brooks, a reasonable officer could have believed that Brooks had "remained" on the property.

The parties do not identify a Supreme Court, Fourth Circuit, or Maryland case directly on point. That, however, does not end the inquiry. The Fourth Circuit has recognized that the "plain language" of a criminal statute and "a consensus of decisions from other jurisdictions interpreting similar language" can place the absence of probable cause beyond reasonable debate. *Rogers*, 249 F.3d at 293; *see also, e.g.*, *Mglej v. Gardner*, 974 F.3d 1151, 1164 (10th Cir. 2020) (concluding that officer could not have reasonably believed that he had probable cause to arrest plaintiff "based on the plain language" of the criminal statute). Here, the plain language of § 6-403(b), coupled

9

with a consensus of authority from other jurisdictions interpreting the term "remain," makes it clear that McKimmie lacked probable cause to arrest Brooks for trespassing.

Maryland's criminal trespassing subtitle does not define "remain." *See* Crim. Law § 6-401. The plain meaning of "remain," according to the dictionary, is to stay in the same place. *See Remain*, Oxford English Dictionary Online, https://doi.org/10.1093/OED/1172250299 [https://perma.cc/U783-75PB] (last visited Apr. 22, 2026) (defining "remain" as, among other things, "[t]o continue in the same place or with the same person; to abide, to stay"); *Remain*, Merriam-Webster's Dictionary Online, https://www.merriam-webster.com/dictionary/remain [https://perma.cc/6WE3-6KDM] (last visited Apr. 22, 2026) (defining "remain" as, among other things, "to stay in the same place or with the same person or group").[1] Courts outside of Maryland similarly have interpreted the term "remain" to mean "to stay in the same place" by referring to its ordinary and common meaning. *See, e.g.*, *People v. Howard*, 89 N.E.3d 308, 313 (Ill. 2017) ("Ordinary people using common understanding can readily deduce that passing through a restricted school zone, and even dropping a person off at the school and then immediately leaving the area, are not acts of 'remaining' . . . . On the other hand, it is equally clear that parking one's car in front of a school and waiting to pick someone up does constitute a prohibited act of 'remaining.'"); *State, Dep't of Law & Pub. Safety, Div. of Gaming Enf't v. Boardwalk Regency Corp.*, 548 A.2d 206, 211 (N.J. Super. Ct. App. Div. 1988) (defining "remain," as used in statute forbidding casinos to allow underage persons to "remain" in a casino, to mean "to stay in the same

---

[1] Interpreting the term "remain" according to its plain meaning also is consistent with principles of statutory construction that were well-established under Maryland law at the time of Brooks's arrest. In October 2019, Maryland courts looked to "the plain language of the statute, and ordinary, popular understanding of the English language" in interpreting statutory terms, and when a term was undefined, courts used the dictionary as a starting point to ascertain the meaning of the statute. *Schreyer v. Chaplain*, 5 A.3d 1054, 1058 (Md. 2010) (quoting *Adventist Health Care Inc. v. Md. Health Care Comm'n*, 896 A.2d 320, 333 n.13 (Md. 2006)).

place or with the same person or group") (internal quotation marks omitted); *State ex rel. Seaton v. Holmes*, 798 N.E.2d 375, 377 (Ohio 2003) (defining "remain," as used in statutory phrase "such State remains the residence of the child or of any contestant," to mean "to stay in the same place" and "to continue unchanged in form, condition, status, or quantity") (internal quotation marks omitted); *State v. Fowler*, 32 A. 162, 164 (Conn. 1895) ("remain," as used in law referring to "remaining" tax collector who exists after emergence of a vacancy, "means to continue; to stay; to be left; to be left after another or others have gone").

In light of the statute's plain language and this consensus of authority, no reasonable officer could have concluded, under the circumstances of this case, that he had probable cause to arrest Brooks for trespassing in violation of § 6-403(b). Viewing the evidence in the light most favorable to Brooks, once McKimmie told Brooks to open the door or else be arrested for trespassing, Brooks immediately attempted to comply. He promptly acceded to the officer's command and told the officers that he did not want to be arrested for trespassing and that he would let them into his hotel room. Brooks told the officers that he had to close the door to unhook the latch before he could open the door. They agreed to let him do so. But before Brooks could unhook the latch, the officers kicked down the door, knocked him to the ground, and arrested him. Thus, from the moment McKimmie notified Brooks that he was trespassing and had to leave the hotel, Brooks tried to comply with the order to leave. When the evidence is viewed in the light most favorable to Brooks, Brooks did not "remain"—that is, stay, abide, or continue—on the property. Instead, Brooks immediately attempted to leave, all the while making it clear to McKimmie and the other officers that he was complying with the order. No reasonable officer would have believed that Brooks's immediate attempt to comply with an order to leave the hotel gave rise to probable cause that Brooks was "remaining" on hotel property.

11

McKimmie argues that it was not clearly established that a person had to "remain" on the property for any particular period of time before being arrested for trespassing. ECF 98-1, at 6 ("[N]o authority in the Fourth Circuit or in Maryland case law in October 2019 clearly establish[ed] that . . . McKimmie provided insufficient time to satisfy the element that Plaintiff remained on the property.") The Court rejects this attempt to muddy the waters. When Brooks is given the benefit of all reasonable inferences from the evidence, the jury could have found that Brooks did not wait *at all* before he tried to comply with McKimmie's order. There is substantial evidence to support a finding that Brooks *immediately* attempted to leave and that he did not "remain" on the property for any period of time after McKimmie told him he had to leave. Under these facts, no reasonable police officer would have believed he had probable cause to arrest Brooks for trespassing. Whatever the qualified immunity analysis may have been had Brooks tarried, this is not that case.

McKimmie has not met his burden to show that Brooks's right to be free from unlawful arrest under these circumstances was not clearly established in October 2019. McKimmie is not entitled to qualified immunity on Brooks's Fourth Amendment unlawful-arrest claim. His motion for judgment as a matter of law is denied.

### B.      Rule 59(e) Motion

The Court entered judgment in Brooks's favor on the Fourth Amendment unlawful-arrest claim against McKimmie. The Court did not enter judgment in Brooks's favor on the false arrest, false imprisonment, and state constitutional unlawful-arrest claims because McKimmie did not act with malice and McKimmie is thus immune from liability on those claims, notwithstanding the jury's finding of liability on them.

Brooks moves to alter or amend the judgment. Under Rule 59(e), a party may move "to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The Court may amend an earlier judgment "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

Brooks argues the Court erred by not entering judgment in his favor on the false arrest, false imprisonment, and state-constitutional unlawful-arrest claims. In Brooks's view, McKimmie is not immune from liability on these claims. For support, Brooks relies on a recent unreported decision from the Appellate Court of Maryland, *McCard v. Jones*, No. 1076, Sept. Term, 2024, 2026 WL 251899 (Md. App. Ct. Jan. 30, 2026), which was issued just over two weeks after the jury's verdict and three days after the Court entered judgment in this case. McKimmie responds that *McCard* is inapplicable and that he is immune from liability under the MTCA. McKimmie is correct.

Under the MTCA, Maryland state employees are immune from liability for tortious acts or omissions within the scope of their duties unless they act with malice or gross negligence. *See Marks v. Dann*, 600 F. App'x 81, 85 (4th Cir. 2015); *Wyckoff v. Maryland*, 522 F. Supp. 2d 730, 738 (D. Md. 2007). A deputy sheriff, such as McKimmie, qualifies as a state employee for MTCA purposes. *See* Cts. & Jud. Proc. § 5-522(b); State Gov't § 12-101(a)(6).[2] Brooks does not dispute that McKimmie was acting within the scope of his duties when he arrested him. The jury found

---

[2] Section 12-101 has been amended since October 2019. However, under the version in effect at the time of Brooks's arrest and the current version, a deputy sheriff qualifies as state personnel.

that McKimmie did not act with malice.[3] Thus, McKimmie is immune from liability on Brooks's state-law claims under the MTCA. The Court entered judgment accordingly.

*McCard* does not call into question the Court's immunity finding. In that case, the plaintiff sued a Prince George's County Police Officer—not a deputy sheriff—for battery, negligence, intentional infliction of emotional distress, punitive damages, and excessive force under the Maryland Declaration of Rights. 2026 WL 251899, at *1. The jury returned a verdict in the plaintiff's favor on the battery and excessive force claims but found that the defendant had not acted with malice. *Id.* at *4. The court granted the defendant's post-trial motion for judgment notwithstanding the verdict, concluding that because the jury found the defendant had not acted with malice, she was entitled to public official immunity under Cts. & Jud. Proc. § 5-507. *Id.* The Appellate Court reversed, holding that the court had erroneously granted judgment notwithstanding the verdict on the excessive force claim because § 5-507 did not confer immunity for state constitutional torts and malice was not an element of a claim for excessive force. *Id.* at *9.

*McCard* does not help Brooks for a simple reason: this Court did not find that McKimmie was entitled to public official immunity. The Court found McKimmie immune under the MTCA—which, as the Appellate Court recognized in the very decision Brooks cites, *does* apply to constitutional torts. *Id.* at *3 n.1 ("'immunity under the Maryland Tort Claims Act, if otherwise applicable, encompasses constitutional torts' while public official immunity does not") (quoting

---

[3] The jury did not reach the question of whether McKimmie acted with gross negligence because it did not find McKimmie liable for excessive force under the Maryland Declaration of Rights, which the Court held was the only state-law tort in this case that could have been committed with gross negligence.

*Lee v. Cline*, 863 A.2d 297, 310 (Md. 2004)). The *McCard* Court's discussion of public official immunity has no bearing on McKimmie's immunity under the MTCA.

Brooks nonetheless insists that McKimmie is not entitled to MTCA immunity. He contends that "any immunity [McKimmie] enjoys stems from . . . § 5-507" because McKimmie was acting as an employee of Charles County, rather than the state, when McKimmie arrested him. ECF 106, at 5. As the Court has previously explained, however, "it is 'well settled [under Maryland law] that, as a general rule, county sheriffs and their deputies are officials and/or employees of the State of Maryland, rather than their county." *Brooks v. St. Charles Hotel Operating, LLC*, No. DLB-23-208, 2023 WL 6244612, at *8 (D. Md. Sept. 26, 2023) (alteration in original) (quoting *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 726 (D. Md. 2013)). And the MTCA expressly classifies deputy sheriffs as state personnel. *See* State Gov't § 12-101(a)(6).

Brooks's arguments to the contrary are unconvincing. He points to the Fourth Circuit's statement in *Dotson v. Chester*, 937 F.2d 920, 928 (4th Cir. 1991), that under Maryland law, a sheriff "is not always a state employee or always a county employee" and "may, on occasion, be both, or sometimes one and sometimes the other." But Brooks reads this statement from *Dotson* out of context. The *Dotson* Court made this statement in the context of assessing whether, in a § 1983 suit, Dorchester County could be held liable for attorney's fees and costs arising out of the sheriff's operation of the county jail. The *Dotson* Court concluded that notwithstanding Maryland caselaw holding that sheriffs qualify as state employees for purposes of tort liability, the Dorchester County sheriff qualified as a county official in this § 1983 case because he held "final policymaking authority for the [c]ounty" over the jail's operation and management; thus, the county was liable for his portion of the fee award. *Id.* at 921, 934. But here, the question is not whether McKimmie qualifies as a state or county official for purposes of determining Charles

15

County's liability under § 1983. (Indeed, Charles County has long since been dismissed as a party to this suit.) The question is whether McKimmie qualifies as a state official for purposes of MTCA immunity. Under Maryland statutes and caselaw, he clearly does. *See* Cts. & Jud. Proc. § 5-522(b); State Gov't § 12-101(a)(6); *Peacock v. Debley*, 314 A.3d 439, 449 (Md. App. Ct. 2024) ("Maryland law is clear that the deputy sheriff is entitled to immunity under the MTCA."), *cert. denied*, 319 A.3d 458 (Md. 2024).

Brooks also points to two district court cases—*Santos v. Frederick County Board of Commissioners*, 346 F. Supp. 3d 785 (D. Md. 2018), and *Harried v. Maryland*, No. TDC-24-1190, 2024 WL 4817107 (D. Md. Nov. 18, 2024)—which he claims support his position that McKimmie is a county official who is not entitled to MTCA immunity. They do not. Neither *Santos* nor *Harried* concluded that a sheriff or deputy sheriff was not a state employee for MTCA purposes. *Harried* and *Santos* both addressed whether deputy sheriffs were state or county employees for purposes of § 1983 liability and Eleventh Amendment immunity—questions of federal, not Maryland, law. 2024 WL 4817107, at *4; 346 F. Supp. 3d at 792–800. And the *Harried* Court acknowledged that deputy sheriffs qualify as state personnel under the MTCA. *See* 2024 WL 4817107, at *6.

Finally, Brooks points to various state and Charles County statutes in support of his contention that Charles County exercises "significant control" over the sheriff's office and that the state deems counties financially responsible for certain torts committed by deputy sheriffs. ECF 110, at 3, 5. But Brooks does not explain how these statutory provisions supplant the clear text of the MTCA, which classifies McKimmie as a state employee.[4]

---

[4] Brooks also cites three cases from Maryland's highest court, *Clea v. Mayor and City Council of Baltimore*, 541 A.2d 1303 (Md. 1988), *Rucker v. Harford County*, 558 A.2d 399 (Md. 1989), and

Whatever his employment status may be in other contexts, for purposes of MTCA immunity, McKimmie is a state employee. Under the MTCA, he is immune from tort liability unless he acted with malice or gross negligence. He did neither. Thus, the Court did not err in concluding that McKimmie is immune from liability on Brooks's state-law claims. Brooks has not identified a change in controlling law, new evidence, or a clear error or manifest injustice that would warrant altering or amending the judgment. Brooks's motion to alter or amend the judgment is denied.

## III.    Conclusion

McKimmie's motion for judgment as a matter of law and Brooks's motion to alter or amend the judgment are denied. A separate Order follows.

Date: April 30, 2026

_____
Deborah L. Boardman
United States District Judge

---

*Lee*, to support his position. But none of these cases concluded that a deputy sheriff did not qualify as a state official for purposes of MTCA immunity.

17